IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DAVID HARTSUCH, MD,<br>Plaintiff,<br>vs.<br>STATE OF IOWA, IOWA BOARD OF MEDICINE, IOWA BOARD OF PHARMACY, IOWA DEPARTMENT OF HEALTH AND HUMAN SERVICES, WARREN GALL, JOYCE VISTA-WAYNE, PATRICIA FASBENDER, EUGENE CHERNY, JASON MEYERS, ROSE MITCHELL, VICKI PYEVICH, CHAD STADSVOLD, LAURA STEFFENSMEIER, KATIE CARL, DENNIS TIBBEN, KENT NEBEL, JILL STUECKER, KARI ROLLS, JEROME HILL, ANNE SCHLEPPHORST, LUANN BRICKEI, AMANDA WOLTZ, MARK MATHER, ANDREW FUNK, and KELLY GARCIA,<br>Defendants. | 4:26-cv-00164-SHL-WPK<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Plaintiff David Hartsuch, MD, alleges violations of his constitutional rights arising from an investigation conducted by the Iowa Board of Medicine. Because his claims under 42 U.S.C. § 1983 are untimely—and because the claims would for the most part fail on the merits anyway due to absolute immunity—the Court GRANTS WITH PREJUDICE Defendants' Motion to Dismiss. (ECF 13.)

## I. BACKGROUND.

### *A. Factual Allegations.*

On a motion to dismiss, the Court accepts the allegations of Hartsuch's Amended Complaint as true and draws all reasonable inferences in his favor. *See Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022). This action arises from an investigation into Hartsuch, an emergency medicine physician, by the Iowa Board of Medicine. (ECF 9, ¶ 1.) Given the number of Defendants named in this lawsuit, the Court finds it helpful to group them together. First, Plaintiff sues the State of Iowa, Iowa Board of Medicine, Iowa Board of Pharmacy, and Iowa

Department of Health and Human Services (the "Entity Defendants"). (ECF 9, ¶¶ 5–8.) He sues the Entity Defendants "only for purposes of prospective declaratory and injunctive relief." (Id.) Next, he sues twenty-one individual Defendants "in [their] individual capacity for damages and in their official capacity for prospective declaratory and injunctive relief only." (Id., ¶¶ 9–29.) This includes Defendants Warren Gall, Joyce Vista-Wayne, Patricia Fasbender, Eugene Cherny, Jason Meyers, Rose Mitchell, Vicki Pyevich, and Chad Stadsvold (the "Board Member Defendants"), all of whom were members of the Iowa Board of Medicine at all relevant times. (Id., ¶¶ 9–16.) Defendants Kent Nebel, Laura Steffensmeier, Katie Carl, Dennis Tibben, Jill Stuecker, and Kari Rolls (the "Counsel and Staff Defendants") were legal counsel or senior staff members serving the Board of Medicine. (Id., ¶¶ 17–22.) Defendants Jerome Hill, Anne Schlepphorst, and Mark Mather (the "Investigator Defendants") were investigators for the Board of the Medicine. (Id., ¶¶ 23–25.) Defendant Andrew Funk was the Executive Director of the Iowa Board of Pharmacy, while Defendants Amanda Woltz and Luann Brickei were Iowa Board of Pharmacy staff members (together, the "Pharmacy Defendants"). (Id., ¶¶ 26–28.) Lastly, Defendant Kelly Garcia was the Director of the Iowa Department of Health and Human Services. (Id., ¶ 29.)

This lawsuit stems from actions that these entities and individuals took in connection with a professional investigation into Hartsuch. Hartsuch graduated from medical school in 1995, completed an emergency medicine residency program, and became a board-certified emergency medicine physician in 2002. (Id., ¶¶ 45–47.) When the events giving rise to his claims occurred, Hartsuch was working for AllMed, Inc. on a temporary, or "Locum," basis. (Id., ¶ 49.) Hartsuch alleges that he lost his job and board certification as a result of the investigation, "forever closing the door to continuing his medical career." (Id., ¶ 71.)

The relevant events began in December 2021 when Defendant Kent Nebel announced, on behalf of the Board of Medicine, that twelve Iowa physicians, including Hartsuch, were "officially under investigation…for the dissemination of 'false or misleading' information about Covid-19." (Id., ¶¶ 53–54.) Hartsuch says the group was "stigmatized" by the Board of Medicine's public statement, which was made before providing the doctors with any opportunity to be heard. (Id., ¶¶ 54–55.) In January 2022, Hartsuch received a letter from the Board explaining that they were "conducting a confidential investigation regarding a complaint received pertaining to allegations of spreading COVID disinformation." (Id., ¶ 56). The matter was referred to the Board of Medicine by the Board of Pharmacy after a patient called complaining that a pharmacist was refusing to fill

a prescription written by Hartsuch. (Id., ¶ 57.) From Hartsuch's perspective, the problem here was "the pharmacist's refusal to fill a lawful prescription." (Id., ¶ 60.) Hartsuch therefore accuses the Board of Medicine of improperly converting a complaint about a pharmacist into "the predicate for an investigation of the prescribing physician," without any evidentiary basis. (Id., ¶ 58–59.) Nonetheless, Hartsuch responded to the questions the Board posed by the Board of Medicine in the January 2022 letter. (Id., ¶ 61.)

Hartsuch alleges that "[a] physician under active investigation by [the Board of Medicine] must disclose that fact to…any medical malpractice insurer." (Id., ¶ 62.) He further alleges that medical malpractice insurers will not renew coverage to a physician who is actively being investigated, thus making it impossible for an emergency medicine physician like him to practice in a hospital. (Id.) Moreover, a doctor who has not done clinical work in their specialty within the preceding year cannot obtain malpractice coverage or meet the requirements for board certification. (Id.) Furthermore, "[a]n open investigation by [the Board] prevents a physician from obtaining licensure in other states." (Id.) These consequences are "well-known operating realities of the medical profession." (Id., ¶ 63.)

Hartsuch's last day of work as an emergency-medicine physician was July 5, 2022, although the Complaint is vague about why. (Id., ¶ 66.) He does not, for example, allege that he lost malpractice coverage in July 2022, instead suggesting that he retained it until March 2023. (Id., ¶¶ 62, 66, 69.) Regardless, the Court accepts as true that Hartsuch stopped working in a hospital emergency department in July 2022 and that this, in turn, impacted his ability to maintain his certifications a year later. (Id., ¶ 66, 70.)

On October 2, 2022, the Board sent Hartsuch a Confidential Letter of Warning (the "October 2022 Letter.") (Id., ¶ 67; ECF 16-1, p. 2.) Hartsuch pleadings imply that the October 2022 Letter and corresponding investigation revolved around Hartsuch's Covid-related speech. (ECF 9, ¶¶ 56, 67.) However, Defendants attached the October 2022 Letter to their pleadings, and it made no mention of Covid.[1] (ECF 16-1, p. 2.) Instead, the October 2022 Letter informed Hartsuch that the Board of Medicine "reviewed information pertaining to phone calls between [Hartsuch] and a pharmacist …[which] indicated that [he] inappropriately raised [his] voice during

---

[1] When ruling on a motion to dismiss, the Court "must consider the complaint in its entirety, as well as…documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007). Because Hartsuch incorporated the October 2022 Letter (and the July 2023 Letter, discussed below) into his Complaint by reference, the Court considers them.

these phone calls." (Id.) The October 2022 Letter explained that the Board of Medicine strives to promote "professional and courteous interactions between physicians and other healthcare professionals" and expects doctors to "treat others with respect and dignity, even when there are differing opinions." (Id.) Drawing reasonable inferences in Hartsuch's favor, the Court infers that the "differing opinions" referenced in the October 2022 Letter involved Covid-19.

At the end of the October 2022 Letter, the Board "expressly reserved the right to 'review and reconsider this matter should it be deemed appropriate.'" (ECF 9, ¶ 67.) Hartsuch characterizes this as an indefinite reservation with no triggering condition that was designed to impose "a regulatory cloud" over him and left him uninsurable. (Id., ¶¶ 67–68.) However, the October 2022 Letter expressly said that it was "a private communication between [Hartsuch] and the Board" that did "not constitute a formal disciplinary action, nor [wa]s it a public record." (ECF 16-1, p. 2.) The October 2022 Letter stated that the Board's investigation was over, but the letter itself would be "maintained as part of [Hartsuch's] confidential investigative file" such that he would have to "provide truthful and accurate answers if asked about…the outcome of this investigation by…[an] insurer…or other third party." (Id.)

In March 2023, Hartsuch received a letter "from his medical malpractice insurer stating that, unless the investigation letter was expunged, [he] could not obtain the malpractice coverage required to practice." (ECF 9, ¶ 69.) On July 18, 2023, the Board issued a second letter (the "July 2023 Letter") rescinding the October 2022 Letter and reiterating that "[t]he investigative file remains closed…'without action' pursuant to Iowa Admin. Code r. 653—24.2(5)(e)(1)." (Id., ¶ 71; ECF 16-3, pp. 2–3.)[2] Hartsuch alleges that the timing of the July 2023 Letter was not accidental: "[t]he reservation was removed only after the one-year clinical-activity threshold had run out," at which point Plaintiff had lost his malpractice coverage, his job at AllMed, and his hospital privileges. (ECF 9, ¶ 70.) In January 2025, Hartsuch lost his Board certification, "forever closing the door on continuing his medical career." (Id., ¶ 71.)

The Board "has not expunged the underlying investigative records," and Hartsuch says he "is still required to disclose the existence of the prior investigation in connection with employment, credentialing, and licensure." (Id., ¶ 72.) Hartsuch alleges that the mere existence of the file serves

[2] Pursuant to Iowa Admin. Code r. 653—24.2(5)(e)(1), the Board can decide to "close the investigative file without action." If so, the Board "will notify the complainant and the licensee of the decision…[and] may reconsider or reopen a closed compliant or investigative file at a later date should it be deemed appropriate." *Id.*

as a form of "permanent professional disability." (Id.) Hartsuch contends that other physicians who were investigated for Covid-related reasons had their complaints resolved without disciplinary action, whereas he was "singled out for prolonged investigation" and disparate treatment because Defendants did not like his position. (Id., ¶¶ 73–75.)

Hartsuch brings five claims pursuant to 42 U.S.C. § 1983: Count I, First Amendment Retaliation; Count II, Procedural Due Process (Fourteenth Amendment); Count III, "Stigma-Plus" Procedural Due Process (Fourteenth Amendment); Count IV, Substantive Due Process (Fourteenth Amendment); and Count V, Equal Protection (Fourteenth Amendment) — Selective Enforcement. (ECF 9.) Count I alleges that Defendants' wrongful conduct included "initiating an investigation lacking evidentiary merit, prolonging the investigation indefinitely, issuing the October [] letter with an open-ended reservation…and continuing to maintain the investigative file unexpunged." (Id., ¶ 81.) Similarly, the alleged wrong in Count II was investigating Hartsuch, refusing to dismiss the matter, issuing the October 2022 Letter, and refusing to expunge the file. (Id., ¶ 91.) Count III alleges that Defendants made stigmatizing statements in December 2021 and maintain records showing Hartsuch was "the subject of an investigation predicated on 'COVID disinformation.'" (Id., ¶ 99.) Similarly, Counts IV and V allege that Defendants wrongfully prolonged the investigation and indefinitely reserved their authority. (Id., ¶¶ 116–128.)

### *B. Procedural History and Timing.*

Hartsuch filed this lawsuit in the Iowa District Court for Polk County on February 2, 2026. (ECF 1-1.) Defendants later removed the case to this (federal) Court. (ECF 1.) Hartsuch acknowledges that his § 1983 claims are governed by Iowa's two-year statute of limitations for personal-injury torts. (ECF 9, ¶ 35.) This poses a problem for Hartsuch because the key dates of all the alleged wrongs are outside this timeframe: the public announcement in December 2021, the October 2022 Letter, and the July 2023 Letter. Hartsuch provides various theories for why his claims remain timely, which the Court will address in detail below. (ECF 9.)

## II. LEGAL STANDARDS.

### *A. Motion to Dismiss Standard.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility

standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). In determining plausibility, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012) (per curiam). The Court need not accept legal conclusions, however, and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *United States ex rel. Ambrosecchia v. Paddock Lab'ys, LLC*, 855 F.3d 949, 955 (8th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show…that relief is barred by the applicable statute of limitations." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

*B. Statute of Limitations for § 1983 Claims*

The statute of limitations for § 1983 claims is the length of time that "the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Under Iowa law, that period is two years. Iowa Code § 614.1(2). If a party argues that statute of limitations should be tolled, federal courts again "refer[] to state law for tolling rules." *Id.* at 394. However, federal law governs the accrual date of a § 1983 claim. *Id.* at 388. A § 1983 claim accrues "when the plaintiff has a complete and present cause of action…that is, when the plaintiff can file suit and obtain relief." *Id.* (cleaned up) (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997)).

**III. LEGAL ANALYSIS.**

Defendants' Motion to Dismiss argues that Hartsuch's claims are time-barred and fail on the merits anyway due to qualified immunity and absolute immunity, among other theories. (ECF 16.) For his part, Hartsuch argues that his claims are timely because under the continuing violation doctrine and because discrete acts occurred within the limitations period. (ECF 9.) He also argues that equitable tolling and the discovery rule apply. (ECF 9.) For reasons explained below, the Court concludes that Hartsuch's claims are barred by the applicable statute of limitations and would fail on the merits anyway.

*A. Hartsuch's Claims Are Time-Barred.*

Hartsuch recognizes, as he must, that his causes of action emanate in the first instance from events that occurred more than two years prior to the filing of this lawsuit in February 2026, including the December 2021 press statement, October 2022 Letter, and July 2023 Letter. Accordingly, absent some exception to the governing two-year statute of limitations, his claims are clearly time-barred. For reasons explained below, Hartsuch has failed to establish any relevant exception even when the factual allegations of his Petition are accepted as true and all reasonable inferences are drawn in his favor.

1. <u>The Continuing Violation Doctrine Does Not Apply, Nor Has Hartsuch Alleged Actionable Conduct Within the Limitations Period.</u>

To avoid his timeliness problem, Hartsuch argues, first, that "Defendants' unconstitutional conduct is a continuing violation." (ECF 9, ¶ 36.) The continuing violation doctrine "applies to circumstances 'where it is appropriate to describe each new day…as comprising a new or continuing violation of rights'…But [it] does not apply to the ongoing or delayed consequences of a discrete violation." *Hamby v. Iowa*, 185 F.4th 816, 827 (2026) (quoting *Montin v. Est. of Johnson*, 636 F.3d 409, 415 (8th Cir. 2011)). Put simply, a "continuing violation is occasioned by continuing unlawful acts, not continual ill effects from [an] original violation." *Brown v. Ark. Dep't of Human Services*, 452 Fed. Appx. 690, 692 (8th Cir. 2011) (citing *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007)).

To support his continuing violation theory, Hartusch rests primarily on the fact that the October 2022 and July 2023 Letters remain in his investigative file and thus "remain accessible to and disclosable to malpractice insurers, hospital credentialing committees, and licensing boards." (ECF 9, ¶ 37.) This is not a continuing violation. Instead, any injuries he suffers from the ongoing presence of the Letters in his file are the "continual ill effects" of an alleged "discrete violation." *Brown*, 452 Fed. Appx. at 692; *Hamby*, 185 F.4th at 827.

The First Circuit addressed a similar situation in *Gorelik v. Costin*, 605 F.3d 118 (1st Cir. 2010). There, a physician brought a facially-untimely claim under § 1983 arising out of disciplinary action taken against him by the New Hampshire Board of Medicine. *Id.* at 120–121. The physician argued that the continuing violation doctrine applied because the Board continued to list the disciplinary action against him on its website, which it "routinely update[d] and maintain[ed]." *Id.* at 122. The First Circuit held that this did not extend the statute of limitations under the continuing violation doctrine because the alleged injuries arose out of the original

issuance of the disciplinary action and posting of the same on the Board's website, both of which were discrete acts. *Id.* at 122–23. The same logic applies here. The alleged injuries that Hartsuch experienced arose out of discrete acts occurring in December 2021, October 2022, and July 2023. The fact that relevant materials remained in his file later does not change this. *See id.*; *Pena v. Texas Medical Bd.*, 675 Fed. Appx. 465, 467–468 (5th Cir. 2017) (rejecting continuing violation argument and holding that § 1983 claims arising from ten-year probationary sanction by the Texas Medical Board accrued when the sanction was entered rather than when it was lifted).

Hartsuch's position is even weaker than the plaintiffs in *Gorelik* and *Pena v. Texas Medical Board* because the October 2022 Letter was, by its own terms, private and did not constitute formal disciplinary action. (ECF 16-1, p. 2.) Moreover, the October 2022 Letter stated—and the July 2023 letter affirmed—that the investigation was "closed." (Id.; ECF 16-3, p. 2.) In these circumstances, Hartsuch has not plausibly alleged that the Board of Medicine was continuing to do anything at all with respect to him, much less that any such (non-existent) action was a new and independent act that would constitute a continuing violation.

The result is unchanged by the fact that Hartusch later asked the Board of Medicine to expunge the investigative records. (ECF 9, ¶¶ 39–40.) He argues the Board's refusal was a "discrete act" that occurred within the limitations period, but this argument is nothing more than a repackaging of his continuing violation theory. Either way, his position fails. As the Sixth Circuit put it:

> The most important tenet of the…continuing violations doctrine is that 'a newly accruing claim for damages must be based on some injurious act actually occurring during the limitations period, not merely the abatable by unabated inertial consequences of some pre-limitations action.' Put more simply, an overt act '(1) must be a **new and independent act that is not merely a reaffirmation of a previous act**; and (2) … must inflict a new and accumulating injury on the plaintiff.'

*Z Techs. Corp. v. Lubrizol Corp.,* 753 F.3d 594, 600 (6th Cir. 2014) (emphasis added); *see also, e.g.*, *CSX Transportation, Inc. v. Norfolk Southern Railway Co.*, 114 F.4th 280, 289 (4th Cir. 2024) ("[M]ere silence or inaction from a defendant…isn't enough to restart the limitations period.") Holding otherwise would give anyone subject to a disciplinary investigation the unilateral ability to extend or restart the statute of limitations simply by asking for the investigative records to be expunged. "This would undermine the Iowa Legislature's decision to adopt the statute of limitations in the first place." *Leveke v. Hearst Props., Inc.*, 764 F. Supp. 3d 817, 830 (S.D. Iowa

2025), *aff'd*, No. 25-2138, 2026 WL 102505 (8th Cir. Jan. 14, 2026) (rejecting analogous argument).

For these reasons, Hartsuch's arguments about continuing violations and new discrete acts lack merit and do not solve his statute of limitations problem.

2. Equitable Tolling Does Not Apply.

Hartsuch's equitable tolling arguments also fail. Federal courts "generally refer[] to state law for tolling rules, just [like] for the length of statutes of limitations." *Wallace*, 549 U.S. at 394. In Iowa, "[e]quitable tolling generally involves two doctrines, the discovery rule and equitable estoppel." *Mormann v. Iowa Workforce Development*, 913 N.W.2d 554, 570 (Iowa 2018). "[W]hether tolling is available is often a fact-intensive inquiry for which a ruling on a motion to dismiss…is often inappropriate…[y]et it is also true that a plaintiff may plead himself out of court by alleging facts that…foreclose the application of equitable tolling." *Id.* at 575. Hartsuch argues, first, that the discovery rule redeems his otherwise untimely claims. (ECF 9, ¶ 44.) The discovery rule tolls the statute of limitations "based upon the common sense notion that a potential claim should not be barred when the failure to bring a timely action arises from the plaintiff's lack of knowledge about key facts that are unknown to the plaintiff and cannot reasonably be discovered…even in the exercise of due diligence." *Mormann*, 913 N.W.2d at 566–567.

Here, Hartsuch essentially admits—as he must—that he knew about the Board of Medicine's actions and his corresponding injuries when the Board took action in December 2021, October 2022, and July 2023, respectively. (E.g., ECF 9, ¶¶ 53–56, 67, 71; ECF 16-1, p. 2; ECF 16-3, p. 2.) This is enough in and of itself to defeat Hartsuch's discovery rule argument. "'[U]nder the discovery rule, the limitations period begins when a claimant has knowledge sufficient to put that person on inquiry notice," such that they are reasonably aware of the need to investigate. *Betz v. Mathisen*, 30 N.W. 3d 240, 247 (Iowa 2026) (quoting *Kendall/Hunt Pub. Co. v. Rowe*, 424 N.W. 2d 235, 243 (Iowa 1988)). A plaintiff does not have to be aware of the exact nature of the claim; instead, it is "sufficient that [they] be aware that a problem existed." *Id.* at 248 (quoting *Franzen v. Deere & Co.*, 377 N.W. 2d 660, 662 (Iowa 1985)). "[O]nce claimants have knowledge of facts supporting an actionable claim they have no more than the applicable period of limitations to discover all the theories of action they may wish to pursue in support of that claim." *Id.* at 249 (quoting *Sparks v. Metalcraft, Inc.*, 408 N.W. 2d 347, 352 (Iowa 1987)). The principles reflected

in *Betz* and similar cases squarely apply here. Hartsuch knew enough by July 2023, at the latest, to start the running of the statute of limitations. He no longer had a timely claim in February 2026.

In urging the Court to conclude otherwise, Hartsuch argues that he could not have discovered "the full scope of Defendants' viewpoint-based motivations, the coordinated nature of the investigation against him, his role within Defendants' broader enforcement initiative against physicians who spoke publicly on COVID-19, or the discriminatory comparative treatment of similarly situated physicians" until later. (ECF 9, ¶ 44 (emphasis added).) This argument misses the mark. The question for purposes of accrual of a § 1983 claim is not when a plaintiff like Hartsuch learned the full scope of the defendant's conduct, but rather when he learned of his own injuries and the relationship between those injuries and the defendant(s). *See Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1033 (8th Cir. 2005) (rejecting argument that disability discrimination claim did not accrue until plaintiff had knowledge of all relevant facts). Regardless of the "full scope" of Defendants' alleged wrongdoing, Hartsuch had all the information he needed by July 2023, at the latest, to know that he had been injured by their conduct. *See Borchard v. Anderson*, 542 N.W. 2d 247, 251 (Iowa 1996) (holding that the discovery rule does not apply if "the plaintiff realizes both that he [or she] is injured and what is responsible for causing that injury," even though "the full extent of the harm…has not become manifest" (cleaned up)). His claim is time-barred. *See id.*; *Mormann*, 913 N.W.2d at 575.

The Court likewise rejects Hartsuch's alternative argument that the applicable limitations period was tolled while he "diligently pursued his available administrative and judicial remedies." (ECF 9, ¶ 41.) His argument emanates from the petition for judicial review he filed in Iowa state court under Iowa Code § 17A.19, as well as an administrative claim he filed under the Iowa Tort Claims Act. (ECF 9, ¶¶ 41–43.) The state district court dismissed his petition for judicial review, and the Iowa Court of Appeals affirmed. *Hartsuch v. Iowa Board of Medicine*, No.24-0226, 2025 WL 2793770 (Iowa Ct. App. Oct. 1, 2025). The outcome of his administrative claim is unclear.

The Eighth Circuit has squarely held that the filing of an administrative claim under the Iowa Tort Claims Act does not toll the statute of limitations on a § 1983 claim. *See DeVries v. Driesen*, 766 F.3d 922, 924 (8th Cir. 2014). *DeVries* is governing here. When a plaintiff like Hartsuch "cho[oses] to pursue the state administrative remedies and defer[] filing his § 1983 claim

until after the statute of limitations had run," the § 1983 claim is time-barred. *Id.*; *see also Lown v. Brimeyer*, 956 F.2d 780, 782 (8th Cir. 1992)

The result is the same if Hartsuch's request for equitable tolling is premised on the doctrine of equitable estoppel. Equitable estoppel is rooted in the idea that "no one 'may take advantage of his own wrong.'" *Mormann*, 913 N.W.2d at 568 (quoting *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 232 (1959)). "Generally, equitable estoppel may toll the running of the filing period of a civil rights case when the defendant knows or should have known that its misconduct will reasonably cause the claimant to delay the filing of a timely…claim." *Id.* at 572. Here, although Hartsuch accuses Defendants of wrongdoing in connection with his underlying claim, he does not plausibly accuse them of doing anything to delay or dissuade him from filing his § 1983 claims. Accordingly, equitable estoppel does not apply. *See id.*; *see also Wallace*, 549 U.S. at 396 ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs.").

*B. Most Defendants Would Be Entitled to Immunity on Hartsuch's Claims Anyway.*

Even if Hartsuch's claims were timely, they would fail on absolute immunity grounds anyway insofar as he seeks damages from Defendants in their individual capacities. The Supreme Court has held that "agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts." *Butz v. Economou*, 438 U.S. 478, 515 (1978). "The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution." *Id.*; *see also Cleavinger v. Saxner*, 474 U.S. 193, 199–202 (1985) ("Absolute immunity flows not from rank or title…but from the nature of the responsibilities of the individual official.")

Here, the Iowa Governor appoints the members of Iowa Board of Medicine and Iowa Board of Pharmacy. *See, e.g.*, Iowa Code § 147.12–13 (Iowa Board of Medicine). The Boards, in turn, have the power to "review or investigate…upon written complaint or upon its own motion…alleged acts or omissions which the Board reasonably believes constitute cause…for licensee discipline," and "[d]etermine in any case whether an investigation…or a disciplinary proceeding is warranted." *Id.* § 272C.3(1)(c)–(d). The Eighth Circuit has held in legally indistinguishable circumstances that board members are entitled to absolute immunity for their work in investigating and adjudicating disciplinary complaints. *See Buser v. Raymond*, 476 F.3d

565, 568–69 (8th Cir. 2007). Indeed, "[e]very court of appeals that has addressed the issue has concluded that members of a state medical disciplinary board are entitled to absolute quasi-judicial immunity for performing judicial or prosecutorial functions." *Id.* at 568–569 (citing cases); *see also Dunham v. Wadley*, 195 F.3d 1007, 1010–1011 (8th Cir. 1999) (extending absolute immunity to state veterinary board members). "Even where an official is 'not a Board member, and thus he is one step removed from the 'judicial function of the Board, he nevertheless may be entitled to absolute quasi-judicial immunity if he is engaged in a protected [] function." *Buser*, 476 F.3d at 569 (quoting *Ostrzenski v. Seigel*, 177 F.3d 245, 249 (4th Cir. 1999) (alteration in original)).

The reason the Eighth Circuit and other appellate courts have consistently afforded absolute immunity to board members and related officials is because they are performing quasi-judicial functions in which: "(1) their positions are akin to that of judges; (2) the potential for vexatious lawsuits is great; and (3) enough safeguards exist to protect [the investigated person's] constitutional rights." *Watts v. Burkhart*, 978 F.2d 269, 278 (6th Cir. 1992); *see also Bettencourt v. Bd. of Registration in Med. of Mass.*, 904 F.2d 772, 783–85 (1st Cir. 1990); *Horwitz v. State Bd. of Medical Examiners of State of Colo.*, 822 F.2d 1508, 1516 (10th Cir. 1987).

Even if Hartsuch's claims were not time-barred, *Buser* and similar cases would squarely defeat them as to his claims for monetary damages against Defendants in their individual capacities. His allegations revolve entirely around Defendants' performance of their quasi-judicial functions in connection with the investigation and adjudication of a complaint against him. Such a claim is not viable under § 1983. *See Buser*, 476 F.3d at 571; *Dunham*, 195 F.3d at 1010–11.

**IV. CONCLUSION.**

The Court GRANTS Defendants' Motion to Dismiss. (ECF 13.) The Clerk of Court is directed to enter Judgment in Defendants' favor and close the case.

IT IS SO ORDERED.

Dated: October 27, 2026

STEPHEN H. LOCHER
U.S. DISTRICT JUDGE